May it please the Court, Heather Williams on behalf of Appellant Jason Wright. The District Court, on the Defendant's first motion for disclosure of the hard drive in grant the Defendant possession of the mirrored hard drive under the protective order, which mimicked the one designed by Judge Kaczynski in the Hill case in the Central District of California, and that any examination in either the FBI or the U.S. Attorney's Office would hamper the Defendant's preparation of the case. The Government then filed its first motion to reconsider, and after that motion was filed, testimony was had by both the investigators from my office as well as from the FBI. And the District Court continued with its previous order permitting Mr. Wright to have testimony. Can I ask what the status of this case is at this point, both with regard to when is trial set and when and what do we know about what in fact has happened under the protective order? First of all, with regard to the trial date, there's a current trial date of October the 23rd. Both the U.S. Attorney and I have been talking about how realistic that trial date, given we don't know when this Court's going to be issuing a decision, and either way, we will probably still need a couple of weeks to go ahead and finish the evaluation of the hard drive, and again, regardless of whatever the Court's decision is. With regard to the protective order that we're working under right now, my investigator-slash-expert has been, when his schedule allows, since he is a computer support administrator within the office, gone over to the U.S. Attorney's office to do his examination. It involves loading up a cart, because he uses the forensic computer to analyze other cases as well, including fraud cases, bank fraud cases, bankruptcy fraud cases, and so on like that. He loads his cart up, he moves it zigzag across the courtyard, which is between the courthouse and our office, and it goes through security and then up to the U.S. Attorney's office. He has made arrangements the previous day to go ahead and do that, and then he goes ahead and hooks up all the equipment, has the hard drive checked out to him, goes ahead and attaches the hard drive, and then begins his analysis. Sometimes he feels that it is better for him to go ahead and leave the computer running and is absent from that room, then comes back to the office. Sometimes he continues his examination in that room. He has a laptop. He has Internet access. He also has his cell phone. Sometimes he has been forced to go ahead and leave the computer running overnight, because the analyses can sometimes take days to go ahead and go through a hard drive as large as the one that we have here. And there is some disagreement in the briefs about whether his investigation involves opening the files and viewing the images, and also whether there is a prohibition on him doing that. I gather there is no actual prohibition on him doing that, but could there be? There could be, and there certainly was in the initial order that the district court issued that if the defense was interested and actually felt they needed to go ahead and open any of the images. Well, that's not what it said. It said if you wanted to reproduce it or copy it. I didn't read any prohibition on opening it. I think that the second one may have prohibited us from actually opening it, but certainly it prohibited us from making any reproductions or copies. And we thought we had made it very clear throughout the entire case that that really has not been our interest. I was allowed to go over and look at the images as they had been printed out over at the FBI office. I've continually indicated to counsel that I think we'll be able to work out stipulations that the images that are charged, and I haven't looked at all of them under the superseding indictment yet. But that they are images showing sexually explicit activity, at least one of the participants is a minor. And I think that we're still going to be able to do that. Our investigation is not focusing at all on a need to open up any of the images. We are interested in finding out when files were created, when they were accessed, when they were modified. How many files were created, modified, and so on on the same date when they were moved. Does moving change those dates and so on like that. So you would be comfortable, I mean, if we were somehow to reach the issuance case, which is what you need to get to, how do we reach the issuance case, or could we or should we, that you would be comfortable with a protective order that said you couldn't open the images? Absolutely. Absolutely. And if at any point we felt we needed to, we knew that we'd be able to go back before the court. All right. So how, it seems to me you have a very hard road to hoe in terms of the interlocutory appeal and you seem to be realizing that and kind of shifting over to a mandamus argument. So if I'm right about that, why don't you make your mandamus argument, unless you want to make an interlocutory appeal argument. Well, and there is some overlap, I think, between the two of those arguments. Certainly with mandamus we have to show that we have no other adequate means and we don't have to show each of these five factors, but enough to go ahead and persuade the court. That the petitioner will be damaged or prejudiced in a way which is not correctable on appeal, that the district court's order is clearly erroneous as a matter of law, there is something about an oft-repeated error, but I don't think that that applies here, and that this raises a new and important problem. Well, why doesn't it apply here? I mean, why isn't this going to happen over and over again? Well, I guess it could. And I think that it probably already has, especially given the two district court opinions of Butts and O'Rourke in the case of Arizona. The statute seems to require it, so I assume it's going to happen. And consistently it has, except in the Nellinger case. So then I ask the court to go ahead and consider that as well. But as far as the prejudice in a way not correctable, that I think does indeed overlap with the interpolicatory appeal issue, and that is, we have issues of disclosing, being forced, essentially, to disclose work product, attorney-client privilege, by forcing, first of all, just to make the motion, we had to disclose the name of our investigator expert in this case. You would have had to do that before trial anyway, wouldn't you? Only if he was going to actually testify. I mean, we're still in the pretrial phase. We're still in the investigation phase. If he doesn't testify, how are you harmed? I'm harmed because they still have this knowledge of information that otherwise they would not have, and knowing that they have that knowledge of information, when, how often my investigator was over there, how long he spent over there, can be a substantial inhibition to me deciding whether or not to even have the person testify. Sure. They might be able to cross-examine him. Absolutely. And I may say, you know what, I think that they're going to go ahead and harp on the time, or he spent so much time, and that shows that he's nowhere near as experienced as their own expert, and then make my own decision where I would not have done so otherwise that I'm not going to call this person because I don't want to even risk that. Why do we have jurisdiction to hear what's essentially a dispute on discovery? Because there are certain aspects to this particular disclosure order which, if now not considered, will be forever gone from me. We're not going to be able to turn back the clock on any work product that has already been disclosed to the government by virtue of our investigator, first of all, his identity being disclosed, we explaining why we need to go ahead and do this investigation, and then his comings and goings. A lot of that would be true under Rule 16 in general anyway, right? I mean, if you were going to investigate, I mean, for example, you wanted to do lab tests on, you know, forensic evidence, you'd have the right to have some of the evidence, but in all likelihood, you're going to have to have a protective order, and they're going to know, you know, what lab you're dealing with and so on. And that sadly is true as well. What we have here, though, I think actually goes beyond that. One is to the length and the extent and the amount of time it takes to actually do the fingerprint or looking at clothing or looking at blood. I mean, we have an analysis here that is examining the equivalent of hundreds of truckloads of material, millions, not millions, but thousands and thousands of files. It feels like millions sometimes when I'm looking through the record. But that only gets us up to this point. I mean, there's a point where I should be stepping in to meet with my investigator to look at these things, and perhaps even the defendant should be meeting with the investigator to look through the computer, not to open images, but to look through the computer and to go ahead and direct the investigator. How intimidating is it to have the defendant actually have to go into the U.S. attorney's office to help to go ahead and prepare an adequate defense in his own case? Is there any indication that the U.S. attorney is spying on you, looking at what you're doing, taping the conversations or otherwise eavesdropping? There is no indication of that, but we don't know who has access to the room. We haven't run or examined it for bugs. We don't know how thin the walls are and so on. I'm sorry? Why don't you do that? Because just the same as we're asking the government to trust us that we're not going to be opening the files, we'd like to be able to go ahead and trust them. They're not going to be listening in. They're not going to be watching in. But they do have a record, basically, of when you're there. That much they have. We have to sign in and out. Our investigator does. I would also just go ahead and point out that in addition to going back and forth, there was one time when the examination was called on account of rain, and there was a time also when the wheel on the cart broke and about $1,000 worth of equipment was destroyed when it fell to the ground in this movement. It's an unreasonable situation. I want to reserve the rest of my time. May it please the Court for the Plaintiff appellee of the United States, Judson Myhock, from the District of Arizona. And I think as Mr. Judge Gibson correctly pointed out, this Court does not have jurisdiction. We'd ask this Court to dismiss this appeal because there is the public policy of the disfavors piecemeal appeals, and further, that discovery orders should not be the subject of interlocutory appeals. There is nothing about this judgment, about this discovery order. Kagan. Well, what about the mandamus question? I mean, it seems to me you're probably right about the interlocutory or the Cohen v. Beneficial Finance kind of an appeal. But this case does have some unusual features. There's a new statute. It hasn't been construed. I frankly found some of the government's statutory arguments interesting. In particular, although you don't answer it all in your brief, I don't know why the Public Defender's Office isn't a government facility, and you never respond to that. So we might think there was clear error for that reason. It's a recurring problem, and it's one that while it at least possibly is difficult to figure out how it's going to be, I'm particularly troubled about during trial. I don't understand how this is going to work during trial. Well, Your Honor, first let me speak on the mandamus issue, because we're a little shorthanded dealing with that issue, because defense counsel waited until Friday afternoon on the 21st to file a 28-J letter raising the mandamus issue. I thought it was mentioned at least in the brief. It was mentioned by the government. It was actually mentioned by the attorney for the government in the defense initially filed its motion, its notice of interlocutory appeal in September of 2006. In November of 2006, the government files a motion to dismiss that appeal. And in that motion to dismiss, the government at length talks about – well, not at length, but for a page and a half, two pages – talks about the mandamus issue and how a writ of mandamus is an exceptional remedy that this Court has applied in the past in reviewing discovery orders. Defense counsel responds to the government's motion to dismiss November 24th, 2006, does not mention the mandamus issue. Then this Court denies the government's motion to dismiss the interlocutory appeal with leave to review these – the substantive motion – the substantive part of that argument, which was that the collateral order doctrine does not apply and that an interlocutory appeal of a discovery order is not proper. The defense then files its opening brief. It's not – this is all true. It's also true that on occasion we have re-characterized even direct appeals as mandamuses. And it's also true, I suppose, that if we agreed with you that it hasn't been properly raised, they could turn around tomorrow and file the petition for a writ of mandamus. So is it useful for us to say we're not going to decide it? Well, I would – if the Court is – I'll address the mandamus issue as best I can. And there's a five-part test. But if the Court is seriously considering going down the mandamus road, I would ask the Court to allow a supplemental briefing. That seems fair. A supplemental briefing. And maybe in that, too, direct us to specific issues of those five parts that it feels are the ones that are most in question. But we would – It just occurs to me that it's kind of silly, because if we said no, they'd just file tomorrow. So what's the point? Potentially. That's true. I wish they'd filed it in their opening brief, which they filed back in February of 2007. We actually answered that in April of 2007 and again dropped a footnote about the writ of mandamus issue. And despite that, the defense files a reply in May of 2007 and again still hadn't raised the mandamus issue. So I'm just pointing that out. Is this trial going forward on October 15th? Quite aside from this issue, is the trial going forward on October 15th? The current trial date is October 23rd. I spoke with defense counsel actually just prior to argument this morning. We did have a discussion. I indicated to her that I would be ready to proceed on that trial date. But she indicated to me that there were some things that they needed still to do and that she felt that she would need to continue the trial date. Not particularly related to this? No, not – I don't believe related to this at this point. I believe that they're proceeding, I'm assuming, with their forensic examination and getting ready what they need to do. We do need to have further discussion. We've had several discussions about proposed stipulations. So we're still working out that issue as well. I'd like to address the argument that the Federal Public Defenders constitutes a government facility for purposes of the statute. First of all, it is a little odd that you didn't answer it at all in your briefs. I mean, it's certainly not silly. Well, no, actually, I believe we did, because we talked about the O'Rourke case. And in the O'Rourke case, the judge in that case had a similar issue with regard to a CJA-appointed attorney who said, I'm an officer of the court. You can trust me. And the court, in reviewing that, said, no, that's not what was intended by the Adam Walsh Act, by Section 3509, Subdivision M. And I think that the same logic applies to the Federal Public Defenders Office, because you get into a slippery slope. I mean, at some point, okay, you gave it to the Federal Public Defenders Office because they're an officer of the court, and technically that's a government facility. But I'm a CJA attorney, and I can apply. Well, it's technically a government facility, which it is. It's covered by the statute, and they should be able to have it. It's a plain-words problem. Well, but with regard to that, I think the clear language and the statement of purpose that's underlies the Adam Walsh Act and that supports the passage of the Adam Walsh Act. Well, what is it? I'm really mystified by what it is. I mean, first of all, in this instance, you actually – the copy has been made. There is a copy. In fact, you would never let them, I presume, fool around with the actual hard drive. So you're always going to make a copy, even though the statute seems to say that you can't make copies. So I assume you're always going to make a copy, despite the statute. So first of all, the statute's going to be violated that way anyway, right? Well, the statute's violated if we make a copy and give it to the defense for them to take to conduct their forensic examinations on. Right. But you have to do that, right? Because you're not going to give them – you agree that you have to let them examine it somehow, and you're never going to let them have the original. Yes. I believe the statute's language talks about the reproduction and the providing a copy to defense, because that is part of a forensically surrounding – forensically sound examination that you first start by making a bit-by-bit image copy of the hard drive that contains the contraband so that you don't alter original evidence. So the copying isn't the problem because we know there's going to be a copy made. Exactly. Right. So what's – so then – and she says she can do this and is willing to stipulate to doing it without opening the material. So your argument that the purpose of this is to protect the privacy of the individuals, that doesn't fly either in this case. Well, I think it does. I think that the act – and if you look at the clear intent of the act, what these provisions – what the purpose of this section of the Adam Walsh Act was intended to do was to cast a light on the fact that child pornography is prima facie contraband. I think that if you look at the cases that predated the Adam Walsh Act, the Hill case from the Eighth Circuit – or, excuse me, the Horne case from the Eighth Circuit or the Kimbrough case. But it's my understanding that if there's – if the government seizes a whole lot of marijuana and the defense is that it's really not marijuana, they get to test some of the marijuana, even though it's contraband, right? Sure. But we don't put it in a truck and drive it over to the FPDs or give it to the defense attorney and say, have at it. I mean, even in that situation – and there's disclaimers and provisions under Rule 16 that say that, you know, restrictions on that type of disclosure, there should be appropriate controls. And I think that's what the Adam Walsh Act, this provision – And do you make people go to your labs and test – under your eyes and test the marijuana or you just give them a little bit of it and say, here's a little bit of it, go do what  Both ways. It depends on what their examiner wants to do. Exactly. And I think with marijuana, it's different, and I don't want to, you know, get into this because we're kind of going off the beaten track, but, you know, you can look at it and kind of realize and appreciate that it is marijuana. Cocaine, methamphetamine, whatever. Yes. But with regard to – So the fact that it's contraband doesn't mean that the defense lawyers can't have it by definition. And we're not saying that they can't have it. They have access to it, but that access has appropriate restrictions. So now it's the middle of trial, and there's some issue that comes up about – your expert testifies about something about this hard drive, and the trial's over at 5 o'clock, and it's proceeding there next morning, and they want to look at the hard drive with their expert to go over – to be able to cross-examine your expert. What happens? We would definitely make arrangements with them to allow their expert into the – to get access to the hard drive, hook up their – That's nowhere in the order. Well, we would – well, I think allowing for that – the order doesn't set out concretely and envision every potential scenario. I think that in the middle of trial, even the Court, because there's clear language in the Adam Walsh Act that it can either be at a government facility, the U.S. Attorney's Office, or the Court. The Court could have taken possession of this material from the beginning and been the one logging in and out the hard drive and making sure there were appropriate controls on it. And those appropriate controls are in place to help prevent against inadvertent disclosure of the hard drive. Under that circumstance, would the government have been restricted in the same way? Why shouldn't the government be restricted in – that's the other problem I have with this. Why shouldn't the government be restricted in the same way? Why shouldn't – If there's a problem about viewing these images, then the fact that the government has it in its office and anybody can use it, and the government employees can view the same things, why isn't that the same injury? Well, the – we only – that's only done in – necessarily to – during the course of the forensic examination to prepare for grand jury, to prepare for trial. And it's kept at the FBI lab. It's logged in and out. All right. But whatever the injury is, it's the same whether it's, you know, Mr. FBI agent looking at it or Mr. Federal public defender looking at it. That's – that's true, Your Honor. But the Adam Walsh Act doesn't address what could be a disparity between that. And in fact, the cases make it clear that the defense isn't entitled to equal access and there can be appropriate restrictions and controls. And that's what the Adam Walsh Act created when it passed this statute. I think essentially what it was attempting to do was to guard against inadvertent disclosures where, you know, child pornography, you know, either the hard drive or printed materials were left laying out and maybe somebody took them and carried them away. But somehow it has an assumption that the government is perfect about this and the Federal public defender, which is also the government, is not to be trusted. That's – no, I disagree with that characterization. I don't think that the Act is saying we don't trust the Federal public defender's office. I think the Act is saying we want to make sure there's appropriate controls, that it's clear to everybody. Child pornography is a prime occasion contraband. It should be treated as such. And there should be controls about how these hard drives are copied and how these examinations are done so that if there is a situation where, you know, the defense attorney has a copy of this and they're not supposed to, they know not only they violated the order, but they could also potentially face criminal penalties for doing so. And what about employees in your office? Employees in my office? I don't even keep child pornography in my office. I don't even want it. I don't want them to bring copies. When they do, I ask them to destroy them as they're leaving if they've printed out materials. I don't want the hard drives in my office. All those materials stay in a safe in the evidence control room of the FBI. The hard drives that are being examined in connection with forensic examinations by defense attorneys and the witnesses that they've retained are in a safe on the third floor, which is a different floor that houses the civil unit of the U.S. Attorney's Office. This forensic review room is actually in a storage facility or a storage area of the U.S. Attorney's Office. There's no where the civil U.S. attorneys have their offices. There's no criminal I. U.S. A's. My office is on the fourth floor. And one other point I would like to address briefly is this, the asserted privileges that the defense says are violated by virtue of this act. I would note that when the defense brought their motion to compel discovery, which was in March of 2006, after this case had been pending for two and a half years, the defense at that time made a strategic decision to voluntarily disclose the identity of their expert, the CV of their expert. And they also put that witness on in June of 2006 at a hearing. That had nothing to do with the evidence. But in terms of the statute as a whole, it is true that obviously the – since somebody has to sign in and sign out for this under these circumstances, it's always going to be disclosed. I disagree because, again, it says the government or the court. So if defense counsel – and in this case, you can see from the docket sheet, they filed other matters under seal and ex parte. If they wanted to, they could have brought their motion, identified their computer witness as Computer Witness X, sealed up the courtroom. The court could have made findings that person was qualified to conduct a forensic examination. They could have ordered that, saying that it's released to Computer Forensic X. And the court could have taken custody of that and logged it in and out. And the government would have no idea who the defense witness is. The judge could have even placed his employees under a gag order, you know, don't discuss who this witness is, who this person is, how often they've been here. And then when we get to the matter and it's just before trial or prior to trial at the appropriate time, if defense counsel is going to call that forensic witness, then they would have to disclose that, disclose reports. And the court could decide because they would have the chain of custody log whether or not that's something that's appropriate to do. The court's going to love that, aren't they? I would love it. Because to be honest with you, this is quite time consuming for me. And making sure that it's in the safe. Was this option ever explored in this case? They never asked for it. They immediately. Did you ever suggest it? Did I ever suggest it? No. The memorandum of understanding that we forwarded talked about it being, because we already had that procedure in place from the Horn case, relying on the Horn and the Kimbrough case, the Horn case from the Eighth Circuit, which I felt was very well reasoned. And we already had that procedure in place and other forensic examinations that were proceeding in that same way. But clearly, if they had said, you know what, Judge, we're not comfortable going to the U.S. Attorney's Office. Let's have the court do it. I don't see where I would have had a hard, I would have had a very difficult road saying, no, no, no, it has to be to our office. I mean, the Act is clear. It says the government or the court. I mean, they could have taken steps to conceal the identity of that expert. They took it upon themselves to disclose that prior to the Adam Walsh Act even being passed. So any privilege, all privileges are waivable. Here, they clearly waived that. And also, I think that with regard to the information we're talking about, as Judge Baio commented on, what's the harm? We're talking about what the date was, who it was logged out to, and when it was logged back in. If that information isn't covered on direct examination, it's certainly going to be covered on cross-examination. The only difference now is that the government has the chain of custody log in front of it, and if the defense witness takes a stand and says, I was there 40 times and I spent 200 hours and we have a log in front of us that shows he logged it out six times and spent 20 hours, I can cross-examine it. And I think that the court, I think that defense still has a remedy there because it can bring a motion and limit it. The other problem is that, first of all, that there's a lot of going back and forth. It's inconvenient and so on. That's a different, whether that's cognizable is another question. But also that, as I understand it, there are members of the U.S. Attorney's Office who have access to this room. And presumably if, for example, they were running the computer in the middle of the night, it would have access. That doesn't mean they're going to use the access, but they have the access. That's true. And I guess, you know, again, I guess instead of assuming, you know, the worst But that's true in the other direction. That's why this whole thing bothers me so much. I mean, you know, if the Federal public defenders can't be trusted to use this material in a secure way, and especially if they demonstrate in what secure way they're going to use it, then it seems to me that we have a real problem. That's the issue. I mean, you're making an assumption of non-trustworthiness in one direction and not in the other. No, I'm not. Let me be clear. And you. I mean, the statute is. We're, you know, and again, we're just complying with the statute. But again, I don't think the statute is saying we don't trust defense attorneys or Federal public defenders. What it's saying is, you know, it's really clearly signaling this is contraband. It has to be. We have to protect against further dissemination, which victimizes the victims all over again. Here's a procedure and the way to do that. And even within the Adam Walsh Act, it has a safety precaution, a safety valve, if you will. If they don't get reasonable access, they can go back to the district court, like they did in Mellinger, make their record, and the district court can order that disclosure if they find the government's not being reasonable. Your time is very up. That was a very useful and informative argument. Thank you very much. Thank you. I'll give you a couple minutes. Thank you. First of all. What about the court option? The court option. Well, first of all, I don't know that that necessarily changes the situation. The federal public defender is a part of the judiciary in that our budget comes from the judiciary. It's included within the judiciary. Our federal defender is picked by the judiciary. All of our payments go through the judiciary. And the statute doesn't say that the examination has to happen at the courthouse. And so if we are considered a part of the judiciary. No, but I am asking in terms of the practicalities, in terms of your, you know, you have fairly speculative concerns about disclosure issues. They're at least somewhat attenuated. And don't they become more attenuated if you had this court option? The court option is better, but it's not perfect. And the reason being is that we don't have the access to the courthouse and whatever room or safe is going to be inside of the courthouse, except in the same limited hours that we have access to the U.S. Attorney's Office. As the testimony of both the experts was during the first motion to reconsider, frequently those experts come in at about 630 in the morning. They may not leave until 6 or 7 o'clock at night. And so, and then we all know that when we get time to prepping for trial, we're up all night. We're there on weekends preparing for trial. We're not going to have access to the court during those time periods to go ahead and continue the examination, make exhibits using that hard drive. The other thing I didn't understand about the record here, though, is that it's not that much time we're talking about. Certainly the government expert apparently spent 25 days. Is that accurate? So you, I mean, over the last year, surely there was 25 days' worth of time that your person could have used at the court or at the U.S. Attorney's Office. The time period doesn't really seem to be the issue. The time period is the issue with all due respect. First of all, the days that the FBI agent is only a starting point for our particular investigator. They have to replicate, first of all, what the FBI agent did. And so that is the 20, 25 days that we're talking about. But then there is additional investigation and examine that we feel is going to be necessary to go ahead and present the defense in this case. And so, and then carving out the 25 days when you don't have anything else to do, when you don't have a computer problem or a phone problem back at the office, when you don't have personnel problems back at the office, when you don't have training, when you're not trying to manage a district that has four offices that are spread far and afield. See, the problem is that all of these concerns are sort of in the nature of harassment, inefficiency. It doesn't make any sense. Why would anybody require this? But what's the legal problem? There's two legal problems. First of all, the statute, as Mr. Myhock pointed out, says there has to be ample opportunity and reasonable access. So you would say it's not reasonable? It's not reasonable. In fact, the district court … But that's not an attack on the statute. It's a construction of the statute. Yes. It is unconstitutional as applied here. And that the district court initially found it was unreasonable and then reversed itself simply based upon Adam Walsh without finding any additional reasons that made it more reasonable. That's one. The second is let's not confuse due process requirements of equal access and as being the same as ample opportunity. When we think ample opportunity, well, you have enough time. But that's not the same as equal access to the hard drive that the government has. And so those things are two very different matters. And so on its face, then, ample opportunity to reasonable access do not equal the due process requirements of equal access. But that, I mean, how does Rule 16 in general have equal access? In general. I mean, in general, you have some, you know, the government will have, you know, all of the cocaine and you'll have maybe a little teeny piece of it that you can use for some purpose, for a lab purpose. Absolutely. But analyzing cocaine to see if it's cocaine or what purity is, we're talking two examinations here and who knows how long they take, a couple of hours maybe. We're talking a different kind of examination that needs to be done on a hard drive. If you're doing different kinds of analyses and trying to collect file names and dates and open text files and so on like that. The mirrored drive, when it runs overnight in the U.S. Attorney's Office, I don't even recall whether or not the door that it would be in is locked or not. It's a storage room, but it's within the U.S. Attorney's Office. We initially disclosed our expert because we wanted to show, pursuant to what was found in Hill, that we had adequate securities in our own office so that the court could be assured that with this triple and quadruple locking system, everything would be absolutely safe. We don't have the same information about their expert that they're going to have about ours. We're not going to have the times and the dates and the comings and the goings and the number of meetings and who is with them and so on like that. That's not fair. That's not equal at all. Have you asked the trial judge to give you that? But how would we do it? How would we verify it? They're able to verify it because they're saying the statute requires that and that's what's necessary to go ahead and keep the chain of custody and so on like that. Think about that. I will think about that and try and be creative about that. The Hill case decided that the defense was seriously prejudiced if they didn't have actual possession of the hard drive and that an attorney should have repeated access to it. That's what reasonableness is. I mean, there is this little sort of after the fact fact in that case which was that the expert was from out of town. Does that matter? I don't think that it does matter. Just like in the O'Rourke case. In the O'Rourke case, which was in Phoenix, it was a retained, not a CJA attorney, from Ohio and their experts were from Ohio also. The district court still said it was not reasonable. What we're talking about, though, is that you can get an expert from out of town and they can come and spend a week to two weeks solid. That's all that they work on and then they can be done with that. But we don't have that kind of opportunity here and an expert even then, it could be incredibly untenuous to go ahead and do that and quite unreasonable to do it that way without having access to their computer. So all of this in the end really has to do with the time. Suppose they said, all right, fine, we'll get a guard and you can use it. They're not going to do that, but suppose they did that. Use it whenever you want, but in our facility. In the U.S. Attorney's Office, it wouldn't happen because it's the U.S. attorney that has to check it in and out. And again, the problem would be with the court because there does need to be some kind of chain of custody and there needs to be a secure way of keeping those hard drives. So unless there's somebody who's going to be there and having access to the safe, again, we have the problem, well, what if they get done at 3 o'clock in the morning? Do they then just go ahead and leave the computer there? Do they have to wait? Did you discuss at any point the problem of trial? Is there an understanding that during trial that there's going to be some other access? What I had envisioned, sadly, was that we would not have access at night, that we would have to take a recess for however long, a half a day or even a full day, to go ahead and go through the same back and forth shenanigans, hooking it up and running the examination, producing the exhibits and disclosing them then to the government, and then we'd pick up with trial a day later. That's what I had envisioned possibly needing to happen, which, of course, is untenable as well. Okay. Thank you. Thank you. Thank you very much for an interesting argument and interesting case. And the Court is in recess until tomorrow morning. Thank you.
judges: Berzon, Bea, Gibson